## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| HCL AMERICA INC., HCL TECHNOLOGIES LIMITED, and HCL TECHNOLOGIES CORPORATE SERVICES LTD.<br><br>Plaintiffs,<br><br>vs.<br><br>RICK MACE, in his individual capacity, MICHAEL HAVENER, in his individual capacity.<br><br>Defendants. | CASE NO.: |

## COMPLAINT

Plaintiffs HCL America Inc., HCL Technologies Limited, and HCL Technologies Corporate Services Ltd. (collectively, "HCL") say by way of Complaint against Defendants Rick Mace ("Mace") and Michael Havener ("Havener") (Mace and Havener are collectively referred to as "Defendants") as follows:

## PARTIES & JURISDICTION

1.      Plaintiff HCL America Inc. is a California corporation. HCL America Inc. is an expert in software development and provides software quality assurance services.

2.      Plaintiff HCL Technologies Limited is an Indian corporation and an affiliate of HCL America Inc.

3.      Plaintiff HCL Technologies Corporate Services Ltd. is a United Kingdom corporation and an affiliate of HCL America Inc. (collectively with HCL America Inc. and HCL Technologies Limited, "HCL")

4.      Defendant Rick Mace ("Mace") is the former Chief Executive Officer ("CEO") of non-party American Teleconferencing Services, Ltd., d/b/a Premiere Global Services ("PGi").   Mace was PGi's CEO during the relevant timeframe of October 2020 – early 2021. Upon information and belief, he is domiciled in Austin, Texas, and can be served domestically.

5.      Defendant Michael Havener ("Havener") is PGi's former Chief Financial Officer ("CFO") and was its CFO during the relevant timeframe of October 2020 – early 2021.  Upon information and belief, he is domiciled in New South Wales, Australia, and can be served via the Hague Convention.

6.    Jurisdiction in this court has been conferred pursuant to a mandatory exclusive forum selection clause in the contract that Defendants, through their conduct, induced HCL to enter into, which provides that the federal and state courts located within Fulton County, Georgia, shall have exclusive jurisdiction to resolve any disputes arising hereunder.  Specifically, this clause is found in Section 17.2 of the governing PSA which is attached as Exhibit A and more fully described herein.

7.    Jurisdiction in this court is also appropriate because Defendants' conduct was made on behalf of PGi, a Georgia corporation headquartered in Georgia, for Georgia business, and the Defendants' conduct caused HCL to reasonably rely upon their representations and enter into a contract providing exclusive jurisdiction in Georgia for any disputes.

8.    Further, this Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) in that there is complete diversity between the parties and the amount in controversy in this matter exceeds the sum or value of $75,000, exclusive of interest and costs.

## **FACTS COMMON TO ALL COUNTS**

9.     In 2018, the parties entered into negotiations whereby HCL would confer software development and quality assurance services to non-party PGi.

10.    These negotiations culminated in a Strategic Consulting & Professional Services Agreement ("PSA"), dated December 1, 2018, by and between HCL and PGi.  A true and correct copy of the PSA is attached as **Exhibit A**.

11.    Pursuant to the PSA, HCL would provide software development and quality assurance services to PGi.  The specific services to be performed were to be delineated via a series of Statements of Work ("SOWs") which were separate contracts that needed to be executed by the parties.

12.    In 2020, the Defendants, as Directors and Officers of PGi, knew that PGi was in dire financial condition.

13.    The Individual Defendants knew that in 2020, PGi was on track to sustain a nearly $90 million net loss reflecting its dire financial condition.

14.    The Individual Defendants knew or should have known that, as part of PGi's dire financial condition which was known to them in 2020, PGi would be unable to pay its financial obligations in 2021, including a new SOW to the PSA, as it needed new cash to pay for its preexisting debts.

4

15.    Further, the Individual Defendants, by virtue of their top leadership positions, knew or should have known that PGi's preexisting debts were substantial.

16.    In mid-2020, the Individual Defendants directed PGi to enter into negotiations with HCL to sign SOW No. 8 of the PSA.  The discussed SOW No. 8 contemplated HCL providing internal development of the PGi GlobalMeet Collaboration product ("GMC product").  In exchange for HCL's services under SOW No. 8, the plan was for HCL's sole form of renumeration to come in the form of a monthly revenue split for the GMC Product.

17.    During these negotiations, the Individual Defendants knowingly and/or negligently provided HCL with false information about PGi's financial condition.

18.    Among other things, during the negotiation process for SOW No. 8, the Individual Defendants provided false information to HCL which did not reflect that PGi was in dire financial straits and not able to financially pay future financial obligations such as HCL's contemplated GMC product revenue split.

19.    The Defendants provided information to the effect that PGi would be able to pay its future financial obligations to HCL once SOW No. 8 was signed,

and indeed, HCL and PGi would enter into an exciting new business partnership, jointly splitting revenue for the GMC Product.

20.     Notwithstanding the fact that Defendants knew that PGi was not financially able to pay HCL under SOW No. 8, PGi, at Defendants' direction, and HCL, entered into SOW No. 8 on October 20, 2020.

21.     Effective October 20, 2020, HCL relied upon the false financial information which the Defendants had provided and entered into SOW No. 8 with PGi.

22.     Defendants omitted the key fact that PGi was not financially capable of paying HCL its invoices/GMC Product revenue share in 2021, and never disclosed this to HCL prior or during the parties' contractual relationship under SOW No. 8.

23.     HCL would not have entered into SOW No. 8 if not for the material omissions and false financial information which the Defendants had provided as to PGi's financial status.

24.     HCL also would not have entered into SOW No. 8 if the Defendants had not omitted PGi's distressed financial condition from HCL.

25.     As had been negotiated, pursuant to SOW No. 8, HCL agreed to provide internal development of the PGi GlobalMeet Collaboration product and to

6

provide product engineering, support, and operations to PGi.  A true and correct copy of SOW No. 8 is attached as **Exhibit B**.

26.    Pursuant to SOW No. 8, as had been discussed in the parties' negotiations, HCL was to be paid through a revenue sharing model based on a percentage rate of the revenue invoiced by PGi to its customers, as detailed in SOW No. 8.

27.    Section 5.1 of the PSA provides that "[u]nless reasonably disputed," any invoice must be paid within 45 days.

28.    Section I(4) of SOW No. 8 modifies this provision and states that invoices issued pursuant to SOW No. 8 must be paid within 15 days.

29.    HCL complied with all of its contractual obligations under the PSA and SOWs, and PGi was pleased with HCL's performance and continued requesting that HCL provide PGi with various services.

30.    Pursuant to SOW No. 8, on a monthly basis and within 10 days from the end of each calendar month, PGi was to provide a Fee report to HCL.  The Fee report would detail PGi's monthly revenue so that HCL could invoice PGi for HCL's share of the revenue split, as detailed in SOW No. 8.

31.    Pursuant to SOW No. 8, PGi was to make full payment of HCL's invoices within 15 days of receipt.

32.     Pursuant to the PSA, if PGi failed to make full payment of HCL's invoices within the "specified period" as defined in a SOW, HCL received the right to charge interest on the unpaid balance at the rate of 1% per month.

33.     Defendants knew or should have known that PGi would not be in the financial position to pay HCL its GMC Product revenue split pursuant to SOW No. 8 because due to PGi's extreme financial distress, PGi needed to apply the GMC Product revenue to pay its pre-existing debts.

34.     Defendants knew or should have known that in early 2021, PGi began defaulting on its important financial commitments such as its real estate leases.

35.     Defendants knew that PGi was cash flow negative beginning in early 2021, before any HCL GMC Product revenue split invoices were due, and as a result of PGi's distressed financial condition, PGi would be unable to pay HCL its contractual invoices.

36.     Beginning with the HCL invoice received by PGi on February 3, 2021, PGi defaulted under the PSA and SOW No. 8 by failing to remit payment. Attached as **Exhibit C** are true and correct copies of the outstanding invoices/amounts due to HCL which PGi never paid under SOW No. 8.

37.     PGi continued to default and materially breach the PSA and SOW No. 8 by failing to render payment for HCL's invoices provided thereafter.

8

38.     Despite Defendants' knowledge that PGi did not have the financial ability to pay HCL's invoices, Defendants never communicated this to HCL.

39.     Further, in early March 2021, Michael Havener, in conjunction with Rick Mace, decided that HCL was not a "critical" vendor which PGi would pay and specifically issued an internal payment hold on all of HCL's invoices to PGi.

40.     At no point did Defendants or PGi communicate to HCL that Michael Havener has issued an internal payment hold on all of HCL's invoices.

41.     HCL relied on this false information which originated from Defendants and continued performing work under SOW No. 8.

42.     Additionally, Defendants intentionally omitted the key fact that PGi was not financially capable of paying HCL its invoices/GMC Product revenue share in 2021, and never disclosed this to HCL during the parties' contractual relationship under SOW No. 8.

43.     In fact, in a prior action by HCL against PGi for PGi's breach of SOW No. 8, PGi's Director of Finance, Eric Head, who directly reported to Michael Havener, served as PGi's Rule 30(b)(6) corporate representative deposition witness. Mr. Head made a number of admissions on behalf of PGi that exposed Defendants' malfeasance.

44.    Mr. Head testified that PGi was extremely financially distressed as of 2019, sustaining an approximate loss of $188 million. *See* Eric Head Deposition Transcript ("Head Dep. Tr.") at 72:25 – 73:5. As PGi's CEO and CFO, Defendants were aware of PGi's extreme financial distress.

45.    Mr. Head testified that PGi was cash flow negative for the entire year of 2021 and never had any money to pay HCL for its GMC Product revenue invoices pursuant to SOW No. 8. Head Dep. Tr. 98:2-13.

46.    Despite this admission, when HCL first inquired with PGi as to the status of its unpaid invoices, a PGI representative stated, in email: "Invoice has been processed and we are co-ordinating with treasury team for payment. Once we get update we will inform you same."

47.    This representation was made to HCL after Defendant Havener had already issued the internal payment hold of all of HCL's invoices.

48.    A month later, another PGi representative told HCL, through email: "Invoice is processed in system and We are coordinating with Treasury team to release overdue invoices."

49.    PGi made these false representations at Defendants' direction so that HCL would continue performing services that Defendants knew PGi had no financial ability or intention to pay.

10

50.     Several months after PGi's promises to pay HCL, PGi switched gears. Defendants provided HCL with false information yet again and utilized a pretext about the financial responsibility under SOW No. 8 to pay for third-party software as an excuse not to pay HCL's outstanding invoices.

51.     Specifically, Defendants claimed that if PGi and HCL were able to resolve a dispute which PGi had raised about HCL's financial responsibility to reimburse PGi for certain third-party software programs and tools pursuant to SOW No. 8, PGi would pay HCL its outstanding GMC Product revenue share invoices.

52.     Mr. Head testified that Mr. Havener directly informed him about PGi's pretext to utilize the purported third-party software financial responsibility dispute, which was dwarfed by the outstanding amount that PGi owed to HCL, so that HCL would continue providing services pursuant to SOW No. 8. Head Dep. Tr. 34:14 – 35:18; 37:21 – 38:24; 47:21 – 48:7.

53.     Defendants knew that PGi had no ability to pay HCL yet entered the contract and thereafter continued with this third-party software pretext nonetheless.

54.     Mr. Head testified that he directly internally approved the payment of all of HCL's GMC Product Revenue share invoices, however, it was specifically

Defendants' decision to block payment because PGi did not have the funds to pay HCL. Head Dep. Tr. 34:24 – 35:6; 37:21 – 38:24; 47:21 – 48:7; 97:19-22; 98:2-13.

55.     Mr. Head testified that PGi began defaulting on its real estate office leases at the beginning of 2021. Head Dep. Tr. 40:24 – 41:25.  As PGi's CEO and CFO, Defendants surely were aware of this.  Yet not only did they never communicate this or other facts about PGi's extreme financial distress to HCL, they directed Mr. Head to utilize the third-party software pretext so that HCL would continue working, unpaid, under SOW No. 8. Head Dep. Tr. 34:14 – 35:18; 37:21 – 38:24; 39:20-24; 43:19-24; 46:14-17; 47:21 – 48:7; 50:24 – 51:3; 97:19-22; 98:2-13.

56.     By letter dated September 9, 2021, HCL issued a formal material breach notice to PGi and demanded that PGi cure its default.  In this letter, HCL notified PGi that, pursuant to the PSA, if PGi did not cure its material breach within 20 days of the letter, HCL may exercise its right to terminate the contract.

57.     By letter dated October 12, 2021, HCL sent another letter to PGi and demanded that PGi cure its default.

58.     By letter dated October 22, 2021, PGi stated that it "wanted to take this opportunity to personally thank [HCL] and your legal team for proactively reaching out and sending the October 12, 2021 letter" which was addressed to new

recipients at PGi. In this letter PGi committed to providing HCL with its position on HCL's outstanding invoices by November 1, 2021.

59. Defendants never provided HCL with PGi's position on the outstanding invoices by November 1, 2021 or at any future point during the contractual relationship between HCL and PGi.

60. Nor did Defendants ever dispute any invoices as required by the contract documents.

61. Nor did Defendants ever disclose the fact that PGi was financially incapable of paying HCL's invoices under SOW No. 8 to HCL.

62. In fact, following HCL's initial demand letter, PGi continued to request that HCL perform additional services on its behalf pursuant to SOW No. 8.

63. HCL continued to provide services and was hopeful PGi would pay its outstanding invoices, however, PGi failed to remit any payment.

64. By letter dated December 8, 2021, HCL issued PGi a termination notice which terminated SOW No. 8 for cause, and again demanded that PGi repay its outstanding invoices.

65. Despite SOW No. 8 containing a clear provision for PGi to report any issues with HCL's work quality to HCL within 15 days, Defendants never reported

any issues with HCL's work quality to HCL within 15 days of their alleged occurrence.

66.    Nor did Defendants or PGi ever raise any complaints to HCL about its services during the term of SOW No. 8.

67.    PGi and Defendants never accepted HCL's invoices and never raised any disputes within the time period allocated by the contract.

68.    In fact, PGi and Defendants internally approved the payment of HCL's GMC Product revenue share invoices.

69.    PGi never paid HCL's GMC Product revenue share invoices because it did not have the financial ability to pay these invoices.

70.    As of September 19, 2022, PGi owes HCL the following amounts pursuant to the PSA and SOW No. 8:

| InvoiceNo | Invoice date | Amount due in USD | Payment due date as per SOW | No of days for Interest | Accrued Interest in USD | Amount due incl. interest in USD |
|---|---|---|---|---|---|---|
| 57068730 | 3-Feb-21 | 192,000 | 18-Feb-21 | 579 | 36,449 | 228,449 |
| 57076291 | 28-Mar-21 | 788,698 | 12-Apr-21 | 526 | 136,018 | 924,716 |
| 57081039 | 10-May-21 | 699,674 | 25-May-21 | 483 | 110,801 | 810,474 |
| 57082152 | 20-May-21 | 626,942 | 4-Jun-21 | 473 | 97,227 | 724,170 |
| 57087909 | 24-Jun-21 | 585,453 | 9-Jul-21 | 438 | 84,075 | 669,528 |
| 57094272 | 29-Jul-21 | 563,005 | 13-Aug-21 | 403 | 74,391 | 637,396 |
| 57099079 | 24-Aug-21 | 558,014 | 8-Sep-21 | 377 | 68,974 | 626,988 |
| 57106114 | 29-Sep-21 | 518,380 | 14-Oct-21 | 341 | 57,957 | 576,337 |
| 57111141 | 29-Oct-21 | 522,945 | 13-Nov-21 | 311 | 53,323 | 576,268 |
| 57118160 | 6-Dec-21 | 510,913 | 21-Dec-21 | 273 | 45,731 | 556,644 |
| **Grand Total** | | 5,566,025 | | | 764,945 | 6,330,970 |
| November/December Revenue share to be invoiced (as per data shared by PGi) | | 729,565 | | | | 729,565 |
| **Grand Total Including November/December revenue share and Accured interest till 19th Sep 2022** | | | | | | **7,060,535** |

| Particulars | Value | Unit |
|---|---|---|
| Rate of Interest as per MSA | 1.0% | per month |
| Payment term as per SOW (H4. Payment & taxes) | 15 | days |
| End date for Interest accrual | 19-Sep-22 | |

71.     Accordingly, as of September 19, 2022, PGi owes HCL $6,330,960 on the outstanding invoices and $729,565 in interest charges for a total of $7,060,535.

72.     Eric Head, on behalf of PGi, testified that the total amount of contractual offsets that PGi sought from HCL was $2,035,783.53. Head Dep. Tr. 67:24 – 68:17 and Plaintiffs' Marked Exhibit P-17 from the Head Deposition.

73.    This leaves a net amount of $5,024,751.47 owed to HCL under SOW No. 8 as of September 19, 2022.

74.    HCL never would have sustained these economic damages if not for the negligent and/or knowingly false misrepresentations of PGi's financial condition supplied by Defendants to HCL, as previously detailed.

## FIRST CAUSE OF ACTION

### Negligent Misrepresentation

75.    HCL incorporates the above allegations as though they have been fully set forth herein.

76.    HCL entered into a PSA with PGi pursuant to which PGi agreed to make payments to HCL for services rendered pursuant to various SOWs.

77.    After signing the PSA, and before signing SOW No. 8, Defendants negligently provided HCL with false information about PGi's financial condition.

78.    Individuals such as Defendants, high ranking officers and directors at PGi, who supply information during the course of their business and employment, owed a duty of reasonable care and competence to parties who rely upon the information, such as HCL.

79.    Defendants breached their duty by, among other things, negligently provided HCL with false information about PGi's financial condition during the negotiations before HCL signed SOW No. 8.

80.    Defendants knew or should have known that PGi was in dire financial condition and would be unable to meet its financial commitments promised to HCL under the contemplated SOW No. 8, yet negligently communicated false information to HCL about PGi's financial condition.

81.    HCL reasonably relied upon the false information supplied by Defendants and entered into SOW No. 8 with PGi pursuant to which PGi agreed to make payments to HCL in the form of a revenue split via the terms contained in SOW No. 8.

82.    PGi has materially breached both the PSA and SOW No. 8 by failing to make payment to HCL for services rendered.

83.    After HCL entered into SOW No. 8, but prior to PGi materially breaching, Defendants knew that, as a result of PGi's dire financial condition, PGi was defaulting on its material obligations such as its real estate leases.

84.    Defendants further knew or should have known that PGi was cash flow negative as of early 2021 and financially incapable of paying HCL its GMC Product revenue invoices pursuant to SOW No. 8.

85.   Defendants negligently never communicated this information to HCL.

86.   Defendants further negligently provided HCL with false information by supplying information to the effect that there was an outstanding dispute over HCL's financial responsibility to reimburse PGi for certain third-party software programs and tools pursuant to SOW No. 8.

87.   Defendants further negligently provided HCL with false information by supplying information to the effect that once this dispute was resolved, PGi would pay HCL its outstanding GMC Product revenue share invoices.

88.   HCL reasonably relied upon the false information supplied by Defendants and continued performing under SOW No. 8.

89.   HCL complied with all of its contractual obligations under the PSA and SOW No. 8.

90.   HCL would not have continued performing under SOW No. 8 had Defendants not negligently provided it with false information as previously described.

91.   The aforementioned conduct represents a further breach of Defendants' duty to act with reasonable care and competence to parties who rely upon the information provided by Defendants.

92.     HCL has been damaged by Defendants' negligent misrepresentations in the net amount of $5,024,751.47, as of September 19, 2022.

**WHEREFORE**, HCL demands judgment against Defendants together with compensatory damages, attorneys' fees, interest, costs of suit, and such other and further relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION

### Fraudulent Inducement

93.     HCL incorporates the above allegations as though they have been fully set forth herein.

94.     Defendants knew that PGi was in dire financial condition no later than the time period before PGi and HCL began negotiations to enter into SOW No. 8 and PGi would not be able to meet its financial commitments to HCL.

95.     Among other things, as admitted by Eric Head, Defendants knew that PGi was "getting probably pretty [financially] distressed in 2019" and was on track to sustain an approximate $90 million loss in 2020.

96.     Despite possessing this knowledge, Defendants directed PGi to begin negotiations with HCL to enter into SOW No. 8.

97.     During these negotiations, which occurred prior to SOW No. 8's signing on October 20, 2020, Defendants transmitted knowingly false information

19

to HCL about PGi's financial condition in order to induce HCL to enter into SOW No. 8. These knowingly false representations included, but were not limited to, statements to the effect that HCL would be receiving from PGi all of HCL's contracted revenue share under SOW No. 8, that SOW No. 8 would represent an exciting business partnership between the parties, and otherwise creating the impression with HCL that PGi's financial condition was acceptable.

98.    Defendants knew these statements were not true when made, as they knew that PGi had no financial ability to pay HCL under the contemplated SOW No. 8, as Defendants knew that PGi's extremely distressed financial condition rendered the contemplated payments to HCL impossible.

99.    Defendants made these representations with the intent of deceiving HCL and inducing HCL into entering SOW No. 8.

100.   HCL reasonably relied upon Defendants' knowing misrepresentations by entering into SOW No. 8.

101.   HCL never would have entered into SOW No. 8 had Defendants not made their knowing misrepresentations about PGi's financial condition during the negotiations for SOW No. 8.

102.   Defendants intentionally omitted the key fact of PGi's distressed financial condition from HCL in order to induce HCL to enter into SOW No. 8.

103.   Defendants knew that PGi would not have the financial ability to pay HCL's invoices under SOW No. 8, yet intentionally omitted this key fact when negotiating with HCL.

104.   HCL never would have entered into SOW No. 8 had Defendants not intentionally omitted PGi's extremely distressed financial condition from HCL.

105.   HCL has been damaged by Defendants' fraud in the inducement in the net amount of $5,024,751.47, as of September 19, 2022.

**WHEREFORE**, HCL demands judgment against Defendants together with compensatory damages, punitive damages, attorneys' fees, interest, costs of suit, and such other and further relief as the Court may deem just and proper.

### THIRD CAUSE OF ACTION

### Fraud

106.   HCL incorporates the above allegations as though they have been fully set forth herein.

107.   O.C.G.A. S 51-6-1 is a governing Georgia statute which provides: ""Fraud, accompanied by damage to the party defrauded, always gives a right of action to the injured party."

108.   Before PGi had first defaulted under SOW No. 8, which occurred in March 2021, Defendants knew that PGi was extremely financially distressed and had no financial ability to pay HCL its GMC Product revenue split invoices.

109.   Defendants knew this because among other things, by this time, PGi had already begun defaulting on its office leases.

110.   By this time, Defendants were already choosing "critical" vendors which PGi would pay and the many vendors which PGi had no intention of paying in full or in part.

111.   Defendants knew that PGi was "pretty [financially] distressed in 2019," sustained an approximately $90 million loss in 2020, and was in extremely distressed financial condition prior to PGi's first default under SOW No. 8.

112.   Defendants knew, as admitted by Eric Head, that PGi had sustained an approximate loss of $188 million in 2019 and that in 2021, "that came back to what our real revenue run rate would look like."

113.   Defendants further knew that PGi was cash flow negative for the entire year of 2021 and had no intention nor financial ability to pay HCL.

114.   Despite possessing the aforementioned knowledge, Defendants made knowing misrepresentations to HCL beginning after HCL's second revenue share

invoice was due, with the intent of inducing HCL to continuing providing services under SOW No. 8, without being paid, for as long as possible.

115.   In early March 2021, Michael Havener, in conjunction with Rick Mace, decided that HCL was not a "critical" vendor which PGi would pay and specifically issued an internal payment hold on all of HCL's invoices to PGi.

116.   Despite Defendants issuing this internal payment hold of all of HCL's invoices, at no point did Defendants, or PGi, ever communicate this fact to HCL.

117.   Instead, after HCL first inquired with PGi about its unpaid GMC Product revenue share invoices, in approximately March 2021, Defendants caused PGi to inform HCL that HCL's invoices were being processed and would be paid.

118.   Despite Defendants representing to HCL that its invoices were being processed and would be paid, Defendants then directed PGi to be slow in responding to HCL's follow up requests, but to eventually respond.

119.   After several months of follow up between HCL and PGi, during which time HCL was providing services because PGi had promised to pay its outstanding invoices, Defendants then made the false representations to HCL that there was a purported dispute over the financial responsibility to pay certain third-party software under SOW No. 8.

120.   Defendants knew that the amount of the purported third-party software dispute was dwarfed in comparison to the substantial amount of funds which PGi had already owed HCL pursuant to HCL's GMC Product revenue share invoices, and the net amount owed to HCL was substantial.

121.   Defendants further falsely represented to HCL that once this purported third-party software dispute was resolved, PGi would pay HCL its outstanding invoices.

122.   These false misrepresentations were made by Defendants over the span of March 2021 – December 2021.

123.   Defendants knew all of the aforementioned misrepresentations were false when made, as they knew that PGi did not have the financial ability to pay HCL.

124.   Defendants made these misrepresentations with the intent of inducing HCL to rely on them in the form of HCL's continuing to perform services under SOW No. 8 for PGi, without being paid, for as long as possible.

125.   HCL reasonably relied on Defendants' knowing misrepresentations and continued performing under SOW No. 8.

126.   If Defendants did not make these knowing misrepresentations and instead were honest that PGi did not have the financial ability to pay HCL and in

fact had previously issued an internal payment hold against HCL, HCL would have terminated SOW No. 8 immediately and would not have continued performing under the contract.

127.   Defendants also omitted the key fact from HCL that PGi did not have the financial ability to pay HCL's invoices under SOW No. 8.

128.   If Defendants did not omit this key fact and instead disclosed it to HCL, HCL would have immediately terminated SOW No. 8.

129.   HCL has been damaged by Defendants' fraud in the performance of SOW No. 8 in the net amount of $5,024,751.47, as of September 19, 2022.

**WHEREFORE**, HCL demands judgment against Defendants together with compensatory damages, punitive damages, attorneys' fees, interest, costs of suit, and such other and further relief as the Court may deem just and proper.

Respectfully submitted this 15th day of November, 2022.

**DLA PIPER LLP (US)**

By: */s/ Brendan Krasinski*
Christopher G. Campbell
Georgia Bar No. 789533
Brendan Krasinski
Georgia Bar No. 159089

DLA Piper LLP (US)
1201 West Peachtree Street, Suite 2900
Atlanta, Georgia 30309
Tel.: (404) 736-7800
Facsimile: (404) 682-7800
christopher.campbell@us.dlapiper.com
brendan.krasinski@us.dlapiper.com
Attorneys for Plaintiffs

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that **COMPLAINT** complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the United States District Court for the Northern District of Georgia and states that this has been typed in Times New Roman 14-point font.

By: *<u>/s/ Brendan Krasinski</u>*
Brendan Krasinski
Georgia Bar No. 159089