IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HCL AMERICA INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> RICK MACE, et al., <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 1:22-CV-4540-TWT |

### OPINION AND ORDER

This is an action for fraud. It is before the Court on the Defendants' Motion to Dismiss [Doc. 23]. For the reasons set forth below, the Defendants' Motion to Dismiss [Doc. 23] is GRANTED.

### I. Background[1]

Plaintiff HCL America Inc. is a California corporation in the business of software development and quality assurance, along with its foreign affiliates, Plaintiffs HCL Technologies Limited and HCL Technologies Corporate Services, Ltd. (collectively, "HCL"). (Compl. ¶¶ 1-3). Defendant Rick Mace served as the former Chief Executive Officer of American Teleconferencing Services, Ltd. d/b/a Premiere Global Services ("PGi"), and Defendant Michael Havener served as the former Chief Financial Officer. (*Id.* ¶¶ 4-5). PGi entered

---

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

into a Strategic Consulting & Professional Services Agreement ("PSA") with the Plaintiffs, with the services to be provided under the agreement defined in several "Statements of Work" ("SOWs"). (*Id.* ¶¶ 9-11). One SOW in particular, SOW No. 8, forms the basis of the Plaintiffs' claims against the Defendants. (*See, e.g., id.* ¶¶ 16-37). Essentially, the Plaintiffs allege that the Defendants induced them to enter into SOW No. 8 despite their alleged knowledge that PGi would be unable to pay for the work performed by the Plaintiffs pursuant to SOW No. 8. (*See id.*).

The Plaintiffs filed this action in November 2022 asserting three state law claims against the Defendants: negligent misrepresentation (Count I); fraud (Count II); and fraudulent inducement (Count III). (*Id.* ¶¶ 75-129). The Defendants responded by filing the Motion to Dismiss [Doc. 23] that is presently before the Court. The Plaintiffs previously filed another suit arising out of the breach of SOW No. 8 against PGi itself, and that action is presently stayed pending a ruling on the Motion to Dismiss in this action. *See HCL America Inc., et al. v. American Teleconferencing Servs., LLC, et al.*, No. 1:22-cv-139-TWT (N.D. Ga.). In that action, the Plaintiffs have asserted claims against PGi for breach of contract, breach of the duty of good faith and fair dealing, and account stated arising out of the performance of their obligations under SOW No. 8.

## II. Legal Standards

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff has the burden of establishing a prima facie case by presenting enough evidence to withstand a motion for directed verdict." *United States ex rel. Bibby v. Mortgage Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021). In evaluating a plaintiff's case, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). Where the defendant contests the allegations in the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006). "And where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must draw all reasonable inferences in the plaintiff's favor." *Mortgage Invs.*, 987 F.3d at 1356 (quotation marks omitted).

### III.   Discussion

The Defendants move to dismiss this action under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. In short, they argue under Rule 12(b)(2) that the Court lacks personal jurisdiction over them because they are not Georgia residents, and they lack sufficient minimum contacts with the

3

state. (Mot. to Dismiss at 5-16). Under Rule 12(b)(6), they argue that even if the Court does have personal jurisdiction over them, the Plaintiffs fail to state their fraud-based claims because they affirmed the contract under Georgia law by filing a breach of contract action against PGi. (*Id.* at 16-20). They also argue that the Plaintiffs have failed to plead their fraud claims with sufficient particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure. (*Id.* at 21-24). The Court begins and ends its analysis with the Defendants' personal jurisdiction challenges.

### A. Personal Jurisdiction

The Defendants argue that under Georgia's long-arm statute, they are not subject to personal jurisdiction just because they were employed by a Georgia corporation. (Mot. to Dismiss at 8-9). They contend that the Plaintiffs conflate their individual conduct with that of PGi in an attempt to establish a basis for personal jurisdiction, and that their actions as corporate officers of PGi do not satisfy the long-arm statute. (*Id.* at 9). The Defendants argue that the Plaintiffs have failed to connect any of their allegations of personal conduct to Georgia and have made only conclusory statements connecting their conduct as corporate officers to the state. (*Id.* at 11). Additionally, they argue, the Plaintiffs have not alleged that the Defendants committed a tort in Georgia. (*Id.* at 12). The Defendants argue that even if the long-arm statute is satisfied, exercising personal jurisdiction over them would violate due process because

the Plaintiffs have failed to establish that the Defendants had any independent minimum contacts with Georgia related to this action. (*Id.* at 12-16).

In response, the Plaintiffs argue that their Complaint properly alleges personal jurisdiction over the Defendants under *Amerireach.com, LLC v. Walker*, 290 Ga. 261, 266 (2011), pursuant to the Georgia long-arm statute. (Resp. in Opp. to Mot. to Dismiss at 14-15). They assert that the Defendants were the primary participants in PGi's transaction of business with Georgia and that physical presence in the state is not required to confer jurisdiction. (*Id.*). Specifically, the Plaintiffs argue that the Defendants directly spread false information as to PGi's financial ability in order to induce the Plaintiffs to enter into SOW No. 8. (*Id.* at 15-16). They also note that at all relevant times, PGi's employees were working remotely due to the COVID-19 pandemic, but that Defendant Havener's email signature listed a Georgia address. (*Id.* at 16). Further, the Plaintiffs argue, the contract's Georgia forum selection clause satisfies the due process requirements because the Defendants were closely related to the dispute and could have foreseen that they would be bound by the clause. (*Id.* at 16-18).

A federal court sitting in diversity undertakes a two-step inquiry to determine whether it has personal jurisdiction over a nonresident defendant: the exercise of jurisdiction must (1) be appropriate under the forum state's long-arm statute and (2) not violate the Due Process Clause of the Fourteenth

5

Amendment to the United States Constitution. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010). "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Id.* at 1258 (quotation marks omitted). Thus, this Court must interpret and apply Georgia's long-arm statute in the same manner as the Georgia Supreme Court. The statute, codified at O.C.G.A. § 9-10-91, confers specific personal jurisdiction over an out-of-state defendant if, among other things, he "[t]ransacts any business within [Georgia][.]" O.C.G.A. § 9-10-91(1); *see also Cooper Tire & Rubber Co. v. McCall*, 312 Ga. 422, 429 (2021). In Georgia, a "jurisdiction over a corporate employee or officer does not automatically follow from jurisdiction over the corporation." *Amerireach.com, LLC v. Walker*, 290 Ga. 261, 266 (2011). Indeed, "it is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518 (2006).

If a state's long-arm statute is satisfied, the next step is to assess personal jurisdiction under constitutional due process principles. A court may exercise either general or specific jurisdiction over an individual not domiciled in the state: "[g]eneral jurisdiction arises from the defendant's contacts with

6

the forum that are not directly related to the cause of action being litigated, while specific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint[.]" *Stubbs*, 447 F.3d at 1360 n. 3 (citation omitted). Under either scenario, a court must ensure that "the defendant has 'certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (alteration and quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum-contacts inquiry "ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting with other persons affiliated with the state." *Waite*, 901 F.3d at 1312 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[T]he contacts of the individual defendants with Georgia are not to be judged according to [their corporate employer's] activities in this state." *Amerireach.com, LLC*, 290 Ga. at 266. Nonetheless, "employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." *Id.* at 267-68 (quotation marks and citation omitted).

Beginning with the Complaint, as the Court must, the Plaintiffs allege that Mace is domiciled in Austin, Texas and that Havener is domiciled in South Wales, Australia. (Compl. ¶¶ 4-5). PGi was incorporated and headquartered in Georgia. (*Id.* ¶ 6). The Plaintiffs allege that jurisdiction was conferred via a mandatory forum-selection clause in the PSA that made venue proper in a federal court located in Fulton County, Georgia. (*Id.* ¶ 6). The Plaintiffs also allege that jurisdiction was conferred over the Defendants because they acted on behalf of PGi, a Georgia-based corporation, and the Defendants' conduct led them to enter into the PSA. (*Id.* ¶ 7). The PSA itself, containing the forum-selection clause, was executed on PGi's behalf in February 2019 by Patrick Harper. (Compl., Ex. A ("PSA") ¶ 17.2). SOW No. 8 was executed on PGi's behalf by Havener in October 2020. (Compl., Ex. B at 18).

As far as conduct goes, the Plaintiffs allege in their Complaint that the Defendants, as PGi executives, knew that PGi was "in dire financial condition" in 2020 and, as a result, would be unable to pay its obligations to HCL in 2021. (*Id.* ¶¶ 12-14, 33-35, 42). In mid-2020, the Defendants "directed PGi" to negotiate and execute SOW No. 8 with HCL, and in the course of negotiations, the Defendants "provided false information to HCL which did not reflect that PGi was in dire financial straits." (*Id.* ¶¶ 16-18). In particular, the Defendants "provided information to the effect that PGi would be able to pay its future financial obligations to HCL once SOW No. 8 was signed[.]" (*Id.* ¶¶ 19-21). HCL

8

would not have entered into SOW No. 8 "if not for the material omissions and false financial information which the Defendants had provided as to PGi's financial status." (*Id.* ¶¶ 23-24). Ultimately, the Defendants failed to pay the invoices sent by HCL for work performed pursuant to SOW No. 8. (*Id.* ¶¶ 36-37).

Additionally, the Plaintiffs allege that in March 2021, the Defendants put an internal payment hold on all invoices to HCL, although that information was not communicated to HCL. (*Id.* ¶¶ 39-40). Thereafter, "PGi representative(s)" communicated via email that the invoices were being processed for payment. (*Id.* ¶¶ 46-48). According to the Plaintiffs, the Defendants "direct[ed]" the representatives to make these false representations so that HCL would continue performing services under SOW No. 8 without payment. (*Id.* ¶¶ 49-54). HCL issued several letters informing PGi that it was in breach of the PSA and that if PGi continued failing to pay the invoices due, HCL would terminate the contract, but PGi never remitted any payment. (*Id.* ¶¶ 56-64, 69). The Court will first address the applicability of Georgia's long-arm statute before turning to the due process considerations.

### 1. Georgia Long-Arm Statute

The parties frame the issue here as whether the Georgia long-arm statute confers personal jurisdiction over Havener and Mace because of their roles in perpetuating alleged misrepresentations about PGi's financial status

9

as part of their employment duties, such that they transacted business within the state. As an initial matter, the Plaintiffs did not allege in their Complaint the Georgia long-arm statute as a basis for jurisdiction over the Defendants, although they raise these arguments in their response in opposition to the Motion to Dismiss. (*See* Compl. ¶¶ 6-7); Fed. R. Civ. P. 8(a)(1) (noting that a pleading is required to state a "short and plain statement of the grounds for the court's jurisdiction"). The Court could, therefore, decline to address the Georgia long-arm statute issue on that basis alone. But the perplexity of the parties' arguments here necessitates some clarification of the applicable legal framework.

First, the parties do not dispute that PGi is a Georgia-based corporation headquartered in Alpharetta, Georgia. That fact alone would make PGi subject to personal jurisdiction in this Court if it were a party to this case. *Mallory v. Norfolk Se. Ry. Co.*, 143 S. Ct. 2028, 2038-39 (2023). Second, as the Court reads the Complaint, the Plaintiffs' only alleged theories of personal jurisdiction over the Defendants are (1) that the Defendants, as executives of PGi, were primary participants in the behavior of PGi that gave rise to the claims alleged in the Complaint, and; (2) that a mandatory forum-selection clause in the original PSA provided for venue in a court within Fulton County, Georgia. (Compl. ¶¶ 6-7). In essence, these arguments hinge on imputing PGi's general jurisdiction, by virtue of its principal place of business in Georgia, to the

Defendants on account of their roles as PGi executives. The Georgia long-arm statute, on the other hand, allows a court to assert personal jurisdiction over a "nonresident" of the state in certain circumstances, so long as doing so comports with due process. O.C.G.A. § 9-10-91.

This is where the parties muddy the water. Their confusion is evidenced by the Plaintiffs' assertion that the Georgia long-arm statute confers jurisdiction over nonresidents to the maximum extent permitted by due process. (*See* Br. in Opp. to Mot. to Dismiss, at 18). In fact, "[t]he long-arm statute is not coextensive with procedural due process but rather, 'imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process.'" *Segment Consulting Mgmt, Ltd. v. Bliss Nutraceticals, LLC*, 2022 WL 252309 at *3 (N.D. Ga. Jan. 27, 2022) (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249 (1259 (11th Cir. 2010). And as the Georgia Supreme Court made clear in *Amerireach.com*, in order for an employee to transact business under the long-arm statute via his role as a primary participant, the transaction must have occurred within Georgia or have been directed into the state in some way. *See Amerireach.com, LLC*, 290 Ga. at 268 (noting that under the primary participant theory of personal jurisdiction, the defendant must have "acted in a corporate capacity in Georgia"); *see also Techjet Innovations Corp. v. Benjelloun*, 203 F.Supp.3d

11

1219, 1224-25 (N.D. Ga. Aug. 17, 2016).

Here, construing the Complaint as true, the Plaintiffs have not adequately alleged that the Defendants are subject to personal jurisdiction under the long-arm statute on grounds that they individually transacted business or even committed a tort within the state. *See* O.C.G.A. § 9-10-91(1), (2). There are no allegations that the Defendants ever set foot in Georgia (although physical presence is not required) or directed communications into the state, since the Plaintiffs are also non-residents. The Plaintiffs do not dispute that Havener and Mace are non-residents and have not alleged that the Defendants had any individual connection to Georgia in executing their job duties as it relates to the negotiation of SOW No. 8. The only objective contact with Georgia alleged by the Plaintiffs is PGi's residency.

What the Plaintiffs argue instead is that the Defendants primarily participated in transacting business on a Georgia corporation's behalf, which must constitute transacting business in Georgia under the long-arm statute. The Plaintiffs argument thus attempts to circumvent the long-arm statute's requirement that "the nonresident defendant has purposefully done some act or consummated some transaction in this state" by imputing personal jurisdiction over two non-resident Defendants who did not personally transact any business within Georgia from their corporate employer's general jurisdiction in the state. *Aero Toy Store, LLC*, 279 Ga. App. at 517-18. In fact,

12

much of the Plaintiffs' argument as to the Defendants' individual contacts to Georgia rely on their subjective interpretation that the Plaintiffs "believed" they were directing their emails to the Defendants within Georgia, they believed the Defendants to be working on behalf of a Georgia corporation, and they believed that the revenue produced under SOW No. 8 would be received by PGi in Georgia. (*See* Goyal Decl. ¶¶ 4-5). The Plaintiffs have cited no authority supporting their argument that their subjective beliefs as the Defendants contacts with Georgia are determinative to the personal jurisdiction analysis. The Court therefore concludes that the Defendants are not subject to personal jurisdiction under the Georgia long-arm statute.

The forum-selection clause argument fails, too. The clause here provided that:

> "[The PSA] shall be governed by and construed solely and exclusively in accordance with the laws of the state of Georgia . . . [t]he parties agree to submit to the exclusive jurisdiction of the state or federal courts located in or with responsibility for Fulton County, Georgia to resolve any disputes arising hereunder."

(PSA ¶ 17.2). The first question, then, is whether the present action involves a "dispute[] arising hereunder" such that the clause applies. Under the express terms of the PSA, Georgia law governs the contract, and neither side disputes that fact. Georgia contract law requires the Court to first determine "whether the language of the contract is clear and unambiguous[,] and if it is, "the contract is enforced according to its plain terms, and the contract alone is

13

looked to for meaning." *Copeland v. Home Grown Music, Inc.*, 358 Ga. App. 743, 748 (2021). The language here is not at all ambiguous—it applies to disputes arising under the contract. *See Hereunder*, Black's Law Dictionary (11th ed. 2019) (defining hereunder as "[l]ater in this document" or "[i]n accordance with this document"). Thus, for the clause to apply, the dispute would need to concern the terms and provisions of the contract itself. Here, none of the Plaintiffs' claims rely on either the terms of the PSA or SOW No. 8; they concern the circumstances surrounding the parties' execution of SOW No. 8. Therefore, even if the forum-selection clause could serve as a basis for personal jurisdiction over the Defendants, it cannot do so here.

The Plaintiffs' reliance on *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir. 1987) is misplaced. *Stewart Org., Inc.* did not address personal jurisdiction, and instead held that federal law governs the enforceability of a forum-selection clause with regard to choice of venue. *See Stewart Org., Inc.*, 810 F.2d at 1067-68. Neither side here has argued either that the forum-selection clause is unenforceable or that venue is improper in this Court. Instead, as explained above, the Defendants simply contest whether the clause affords the Court personal jurisdiction over them in this matter. Therefore, as the Court reads the pleadings, the Defendants are not subject to personal jurisdiction under either the Georgia long-arm statute or the PSA's forum-selection clause.

### 2. Due Process Concerns

Even if the Plaintiffs had properly alleged a basis for personal jurisdiction over the Defendants in their Complaint, the exercise of personal jurisdiction here would not comport with the requirements of due process. Again, the Plaintiffs' only argument in this regard is that Havener and Mace had minimum, cognizable contacts with Georgia because they were "primary participants" in PGi's transaction of business within the state. To start, as both parties rely heavily on the Court's recent decision in *Segment Consulting Mgmt, Ltd.*, some explanation is warranted. In *Segment*, the individual defendants argued that they were not primary participants in the resident corporate defendant's tortious conduct taking place within Georgia. To clarify, as the Court noted in *Segment*, an employee's individual actions taken as a primary participant in the corporate employer's "alleged wrongdoing" within the state can satisfy the minimum contacts test for personal jurisdiction in certain circumstances because their participation can constitute purposeful availment of the privilege of doing business in Georgia. *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Amerireach.com, LLC*, 290 Ga. at 266-67.

On to the analysis. Here, the Plaintiffs have failed to carry their burden of establishing that the Defendants were primary participants in the "alleged wrongdoing" giving rise to this action—namely, the purported misrepresentations and false statements that led the Plaintiffs to execute SOW

No. 8. Notably, much of the Plaintiffs' argument is in regard to the Defendants' alleged decisions and direction not to pay the Plaintiffs for work performed under SOW No. 8. But in this action, the Plaintiffs brought only claims for negligent misrepresentation, fraud, and fraudulent inducement surrounding the execution of SOW No. 8. Arguments regarding the Defendants' purported participation in any alleged breach of SOW No. 8 are therefore immaterial to the primary participant inquiry in this action. *See Amerireach.com*, LLC, 290 Ga. at 266-68 ("Personal jurisdiction over [a primary participant] would extend at least as far as matters relating to the activities of the corporation in the forum in which he was a primary participant." (alterations and citation omitted)).

The Plaintiffs have few allegations on this point: (1) Havener was the corporate signatory for SOW No. 8; (2) both Defendants "directed PGi" to negotiate with HCL on SOW No. 8; (3) and the Defendants "provided false information" about PGi's financial conditions during the course of the negotiations. (Compl. ¶¶ 16-21, 23-24). True, the Plaintiffs cite in their Complaint portions of a deposition of Eric Head, PGi's Director of Finance, to bolster their allegations. But the Defendants provided declarations rebutting the Plaintiffs' Complaint, and the Plaintiffs failed to produce the transcript of Head's deposition for evidentiary support in this action. *See Stubbs*, 447 F.3d at 1360; *Mortgage Invs.*, 987 F.3d at 1356. In any event, the cited portions of

16

Head's testimony allude to alleged breaches of SOW No. 8 by PGi at the direction of the Defendants and do not speak instead to the negotiation and execution of SOW No. 8. On the other hand, in their declarations, the Defendants attested that they never visited Georgia during their employment, and they directed all communications to HCL contacts in California or India. (Havener Decl. ¶¶ 10-11; Mace Decl. ¶¶ 3, 9). They attested that they each engaged in some communications with HCL regarding the negotiation of SOW No. 8, but that Patrick Harper was the primary participant on PGi's side. (Havener Decl. ¶¶ 7-9; Mace Decl. ¶¶ 6-8).

All of this is to emphasize—again—that the only objective contact with Georgia that the Plaintiffs have alleged is PGi's residency. But the law is clear that "the contacts of the individual defendants with Georgia are not to be judged according to [their corporate employer's] activities in this state." *Amerireach.com, LLC*, 290 Ga. at 266. In other words, even assuming that the Defendants were primary participants in the actions giving rise to the Plaintiff's claims, a finding of personal jurisdiction due solely to their corporate employer's residency in the state does not constitute "purposeful avail[ment] of the privilege of conducting activities within [Georgia], thus invoking the benefits and protections of its laws." *Aero Toy Store*, LLC, 279 Ga. App. at 518. And construing the Complaint as true, the facts alleged do not indicate that the Defendants could have reasonably expected to be haled into court in

17

Georgia for their roles in the alleged wrongdoing perpetrated against the Plaintiffs on behalf of PGi. *See Techjet Innovations Corp.*, 203 F.Supp.3d at 1228-29. For these reasons, even if the Georgia long-arm statute was satisfied, the exercise of personal jurisdiction over the Defendants would not comply with the mandates of due process.

### B. Failure to State a Claim

Given the Court's determination that it lacks personal jurisdiction over the Defendants, the Court declines to address the Defendants' Rule 12(b)(6) arguments.

### IV. Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss [Doc. 23] is GRANTED. The Clerk is directed to close this case.

SO ORDERED, this <u>  28th  </u> day of July, 2023.

*[signature]*
THOMAS W. THRASH, JR.
United States District Judge